UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF THE COMPLAINT OF
BLESSEY ENTERPRISES, INC., AS OWNER,
AND BLESSEY MARINE SERVICES, INC.,                CIVIL ACTION
AS OWNER *PRO HAC VICE*, OF M/V
CHARLES CLARK, HER ENGINES, TACKLE,                NO. 08-235-JJB
APPURTENANCES, FURNITURE, ETC.,
PRAYING FOR EXONERATION FROM OR
LIMITATION OF LIABILITY

*consolidated with*

IN THE MATTER OF M&P BARGE CO., INC.,
AS OWNER/OPERATOR OF THE M/V                      CIVIL ACTION
HELEN G. CALYX, PETITIONING FOR
EXONERATION FROM DAMAGES OR                       NO. 08-244-JJB
LIMITATION OF LIABILITY

## RULING ON MOTIONS TO DISMISS

Before the Court are motions to dismiss each of these two consolidated actions.[1] Blessey Enterprises, Inc. and Blessey Marine Services, Inc., as owner and owner *pro hac vice*, respectively, of the M/V CHARLES CLARK, moves to dismiss No. 08-235[2] (the lead case), on the basis that all the personal injury and property damage claims against it arising out of its collision with the M/V HELEN G. CALYX have been settled. (Doc. 177; *see also* Sur-Reply, Doc. 184). Similarly, M&P Barge Co., Inc., as owner of the M/V HELEN G. CALYX, moves to dismiss No. 08-244 (the member case) for the same reason. (Doc. 53 in 08-244). The sole opposition comes from Midship Marine, Inc., a claimant-in-limitation whose claims against the shipowners have not been settled and who has not stipulated to a remand to state court. (Docs. 179, 180 (opposing dismissal motions in both cases); *see also* Reply, Doc. 187). Oral argument is unnecessary. Jurisdiction exists under 28 U.S.C. § 1333.

---

[1] This ruling applies to both cases captioned above.
[2] All citations shall be to the lead case, No. 08-235, unless otherwise noted as occurring in No. 08-244.

I.

These cases arose out of a collision on April 13, 2008, between two ships—the HELEN CALYX and the CHARLES CLARK—travelling on the Mississippi River near Angola, Louisiana. Passengers on the HELEN CALYX included 18 employees of the Louisiana State Penitentiary at Angola. Those passengers made claims for personal injuries against the owners and operators of both ships. The owners of both ships filed separate actions in this Court under the Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.* (formerly 46 U.S.C.App. § 181 *et seq.*). The Court consolidated the cases, stayed and restrained pending actions, and enjoined[3] all existing and prospective related proceedings. (Doc. 29 in 08-244 (consolidation order); Doc. 3 in both cases (stay and injunction order)).

Both shipowners have each settled all personal injury and property damage claims brought against them. (Pretrial Order, Doc. 178, at 13). The sole remaining claim against the shipowners concerns a claim by Midship Marine against the shipowners for tort contribution and indemnity. (*Id.*). Midship asserts this claim based on a state court lawsuit filed against it, Blessey, and M&P Barge, among others, by Shirley Jernigan, one of the injured passengers. (*See* Midship's Answer and Counterclaim, Doc. 21, at 7-10; Doc. 26 in 08-244, at 6-9). Jernigan has since settled her claims against all parties, including Midship. (Order of Dismissal, Doc. 169; *see also* Pretrial Order, Doc. 178, at 10 (Midship admitting to "nuisance value" settlement)).

One of the injured passengers, Leslie Mark Dupont, and his wife, filed suit on May 29, 2008, against Midship in Louisiana state court. (Pretrial Order, Doc. 178, at 9-13 (discussing

---

[3] It appears the stay was actually lifted and the injunction dissolved. (*See* Doc. 35). Many of the parties objected to that ruling (*see* Docs. 44-47, 49-51), but their objections were never ruled on before this case was reassigned. (*See* Docs. 133 (setting matter for oral argument), 134 (continuing oral argument), 137 (cancelling oral argument and reassigning at undetermined later date), 163 (terminating all pending motions in light of case reassignment)). The parties appear to be operating under the impression that barriers to state suits still exist. However, these matters are either tangential or irrelevant for present purposes, as will be demonstrated below.

claims of Midship and the Duponts)). The Duponts contend Midship, as manufacturer of the HELEN CALYX, defectively designed the ship by failing to include seatbelts or other safety restraints. (*Id.*). The Duponts settled their claims against the shipowners and signed a release promising to defend and indemnify the shipowners and their vessels from any claims arising directly or indirectly as a result of their injuries sustained in the collision, including claims against the shipowners and their vessels for indemnity, contribution, costs and attorneys' fees. (*See* Dupont Release, Doc. 177-2, at 2). The Duponts expressly reserved their right to sue Midship. (*Id.*).

## II.

Pursuant to Fed. Rule Civ. P. 12(b)(6), on a motion to dismiss for failure to state a claim, the Court accepts all well-pleaded, non-conclusory facts in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A complaint that pleads facts merely consistent with a defendant's liability "stops short of the line between possibility and plausibility." *Id.* at 557. When well-pleaded factual allegations populate the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. Courts may consider not only the complaint itself, but also documents attached to the complaint or documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). The facts in the complaint are viewed collectively, not scrutinized in strict isolation. *Id.* Courts are permitted to take public records and others matters

3

of judicial notice into account when evaluating a motion to dismiss. *Hall v. Hopkins*, 305 Fed.Appx. 224, 227-28 (5th Cir. 2008); *Davis v. Bayless*, 70 F.3d 367, 372 n. 3 (5th Cir. 1995).

III.

Federal courts have exclusive original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). "The saving to suitors clause evinces a preference for jury trials and common law remedies in the forum of the claimant's choice." *ODECO Oil and Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 674 (5th Cir. 1996) (citations omitted). However, Congress granted shipowners a valuable remedy when it passed the Limitation Act, 46 U.S.C. § 30501 *et seq.* The Act permits shipowners who lack privity or knowledge to limit their liability for damages arising from a maritime accident to "the value of the vessel and pending freight." 46 U.S.C. § 30505. The saving to suitors clause cabins a shipowner's right to limited liability and sits in tension with the Limitation Act. *ODECO*, 74 F.3d at 674. However, a district court's primary concern is to protect the shipowner's absolute right to claim the Act's liability cap and to reserve the adjudication of that right in the federal forum. *Id.* Although state court proceedings under the saving to suitors clause must be contingent on a shipowner's absolute right to limit liability, federal courts have developed two instances where a district court must allow a state court action to proceed. *Id.* One arises when all claimants against the shipowner stipulate that the federal court has exclusive jurisdiction over the limitation proceeding. *Id.* The other arises when the total amount of the claims against the shipowner do not exceed the shipowner's declared value of the vessel and freight. *Id.*

A.

Fifth Circuit precedent makes absolutely clear that Midship is a claimant against Blessey and M&P Barge within the meaning of the Limitation Act. *See In re Complaint of Port Arthur Towing Co. ex rel. M/V MISS CAROLYN*, 42 F.3d 312, 316 (5th Cir. 1995) (holding that a co-defendant of a shipowner who asserts a cross-claim against the shipowner for indemnification, costs, and attorneys' fees is a claimant). Midship finds itself in an identical position to the situation described in *Port Arthur Towing*. In fact, since Midship is the only claimant against the shipowners remaining, the joint stipulation exception to exclusive federal jurisdiction no longer applies.

No dispute exists that at the time the shipowners filed their respective limitations proceedings, there existed a reasonable apprehension that the total amount of the claims made or threatened against them could have exceeded the respective value of the ships. However, since all but Midship's claim have been settled, it is less clear whether the second independent justification for exclusive federal proceedings—ensuring the shipowners' absolute rights to limit their liability—still exists. However, the Court need not resolve whether calculation of the total amount of the claims can be made intermittently as claims are settled or whether an *ex ante* calculation alone is appropriate. By virtue of the shipowners filing these motions to dismiss, they have unequivocally manifested their intent to relinquish their right to proceed in this federal forum, and thus they have also waived their right to invoke whatever remaining protections the Limitation Act may afford them.

As the exceptions to the exclusiveness of the federal forum for limitation actions make clear, the paramount concern of a federal court in resolving questions under the Act is whether the shipowners receive the benefit of limited liability. If the question is answered negatively or

remains unclear, federal courts must deny any motion which threatens the shipowners. Shipowners' choice of forum—a federal court sitting in admiralty—thus deserves a very high degree of deference under the precedents.

It is less certain how Midship, an adversarial claimant against the shipowners, may seek to invoke the protections of the Act of behalf of the shipowners. Obvious standing problems arise from such a position. But when Midship's argument to protect the shipowners flies directly in the face of the shipowners' own arguments *against* the federal forum maintaining the action, common sense must prevail. Midship's attempts to concern troll[4] for the shipowners' limited liability rights are unavailing. Indeed, they are directly contrary to Midship's own interests; with the liability cap removed, they have no worries that their recovery, if any, against the shipowners will be diminished. Whatever Midship's motives are for asserting this position, it has neither persuaded the Court that continuing jurisdiction here is mandatory nor has it shown a prudential reason why this action should be maintained against the express wishes of the shipowners.

B.

Because the Act's concerns about the shipowners' liabilities are now alleviated, the tension between the Act and the saving to suitors clause of § 1333, previously tilted in favor of the federal forum, now shifts decisively in the opposite direction. Whatever indemnity or contribution claims Midship may bring against the shipowners by virtue of the Dupont litigation can be handled in that state proceeding.[5] Moreover, Midship's sole live claim in this case—for the indemnity, contribution, costs and attorneys' fees associated with the Jernigan litigation—is

---

[4] *See* Urban Dictionary, Entry for "concern troll" (last visited April 20, 2012), *available at* http://www.urbandictionary.com/define.php?term=concern+troll ("In an argument . . . a concern troll is someone who is on one side of the discussion, but pretends to be a supporter of the other side with "concerns.").

[5] Indeed, because the Duponts have agreed to indemnify and defend the shipowners from any indemnity or contribution claim against the shipowners asserted by Midship, it would appear Midship could not actually recover against the shipowners and vessels themselves, apparently obviating any Limitation Act concerns in that regard.

readily reducible to a sum certain since Jernigan settled with both Midship and the shipowners.[6] That claim too may be easily handled in a separate proceeding. But neither case implicates the policies of the Limitation Act since the shipowners have voluntarily and expressly moved to dismiss this case. Without shipowners' liabilities to protect, the Court finds this forum ill-suited for treating the remaining issues that are tangential to the original purpose of these actions. Hereafter, all the remaining parties still retain the ability to pursue all their claims under the saving to suitors clause unencumbered by the Limitation Act.

Because the Court does not address the merits of Midship's position, the Court need not express an opinion on the applicability of *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), to those claims. Such treatment is better reserved for the relevant state court proceeding, where Midship may re-file or implead its claims against the shipowners.

IV.

Accordingly, the motions to dismiss filed by Blessey Enterprises, Inc. and Blessey Marine Services, Inc. (Doc. 177 in No. 08-235) and M&P Barge Co., Inc. (Doc. 53 in No. 08-244) are hereby GRANTED.

Signed in Baton Rouge, Louisiana, on April 30, 2012.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[6] Because nothing in the record reflects what type of release Jernigan, Midship, and the shipowners signed, the Court expresses no opinion on how that release affects Midship's claims against the shipowners.